UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| S.A., a minor, by parent and next friend DONNA AMELLER, and DONNA AMELLER, individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  3:22-CV-253-CEA-DCP |
| OBER GATLINBURG, INC., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant's Motion to Quash Plaintiff's Subpoena [Doc. 47]. Plaintiff responded in opposition to the motion [Doc. 52].  Defendant did not file a reply.  The motion is ripe for adjudication.  *See* E.D. Tenn. L.R. 7.1(a).  For the reasons set forth below, the Court **DENIES** the motion [**Doc. 47**].

I.      BACKGROUND

Plaintiffs filed their Complaint on July 25, 2022 [Doc. 1] and later filed an Amended Complaint on July 4, 2023 [Doc. 23].  According to the allegations in the Amended Complaint, "[Defendant] owned and operated an all-season amusement park and ski resort [*Id*. ¶ 1].  One of the attractions was an "artificial 'rock' wall" that participants can climb [*Id*. ¶¶ 8, 10].  The participants were required to "put on a harness before they can climb on the wall" [*Id*. ¶ 13]. Plaintiffs allege that "through the acts of its employees, [Defendant] failed to attach [Plaintiff] S.A.'s harness to the safety line and belaying system before he started climbing" [*Id*. ¶ 16].  "As a

result, [Plaintiff S.A.] was unknowingly free-climbing the rock wall with no safety line protecting him from a fall" [*Id*.]. After reaching the top of the wall, Plaintiff S.A. began to descend, but he fell [*Id*. ¶ 19]. "Because [Defendant] failed to attach [Plaintiff] S.A.'s safety harness to the belay system, [he] fell from the wall and struck [an] . . . employee before striking the concrete" [*Id*. ¶ 20]. Plaintiffs allege that there was no "protective padding around the base of the climbing wall in the event a climber did free fall" [*Id*. ¶ 21]. Thus, when Plaintiff S.A. fell, "he struck his head directly against the concrete, suffering a skull fracture and traumatic brain injury[,]" as well as other injuries [*Id*.]. Plaintiff Donna Ameller, his mother, "was standing close to the wall and saw her son fall and heard his head strike the concrete" [*Id*. ¶ 22]. Based on the above, Plaintiffs allege that Defendant was negligent [*Id*. ¶¶ 24–25].

On November 8, 2024, the parties entered into the Stipulation for Defense Medical Examination [Doc. 52-1]. The parties agreed that Plaintiff S.A. would undergo, what the parties refer to as a "defense neuropsychological examination" ("DME") with Jill Kelderman, Ph.D. ("Dr. Kelderman") [*Id*. at 1]. On the same day, Plaintiffs issued a subpoena to Dr. Kelderman, seeking:

> Any and all documents or electronically stored information reflecting psychological testing of Plaintiff, a copy of the actual tests, tests answers, interpretative materials or manuals used, reports of tests, raw data generated, scoring and all test results regarding Plaintiff as well as any audio or video recordings taken of the examination.

[Doc. 45-1]. Plaintiffs served Dr. Kelderman with the subpoena on November 11, 2024 [Doc. 46].

Defendant now moves to quash the subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure [Doc. 47].[1] According to Defendant, the subpoena seeks two different categories of information (1) Test Data and (2) Test Materials [*Id*. ¶ 2]. Defendant states that "Test Data" is

---

[1]     Defendant's motion references Rule 45.03(d)(3) [*see* Doc. 47 p. 1], but the Court presumes this is a typographical error.

defined by the American Psychology Association ("APA") as the "raw and scaled scores, client/patient responses to test questions or stimuli, and psychologists' notes and recordings concerning client/patient statements and behavior during the examination" [*Id.* ¶ 4 (citation omitted)]. It argues that "Test Data may be disclosed by a practitioner when compelled by a court or other tribunal, consistent with the practitioner's ethical and contractual obligations" [*Id.*]. Defendant states that Test Data, pursuant to the APA, cannot be disclosed by psychologists "to anyone other than qualified licensed psychologists or pursuant to a court order" [*Id.* (citation omitted)]. It submits that Dr. Kelderman will only release the Test Data "in accordance with her obligation as a licensed Florida psychologist under F.A.C. § 64B19-18.004, which states that 'a psychologist who uses test instruments may not release test data' except to a 'licensed psychologist or school psychologist'" [*Id.* ¶ 6 (citation omitted)]. The Test Data, Defendant argues, is also protected by the Health Insurance Portability and Accountability Act ("HIPAA") [*Id.* ¶ 7]. Defendant states that "[t]he subpoena issued by the Plaintiff on or about November 8, 2024, was not accompanied by a court order and did not provide satisfactory assurance" in accordance with HIPAA [*Id.* ¶¶ 8–10]. Further, because the state regulation is more protective than HIPAA, it governs [*Id.* ¶ 11].

With respect to "Test Materials," Defendant states that the APA defines it as "manuals, instruments, protocols, and test questions or stimuli" [*Id.* ¶ 5 (citation omitted)]. Defendant argues that under APA Ethics Code Standard 9.11, *Maintaining Test Security*, "psychologists should refrain from disclosing Test Materials to anyone other than qualified licensed psychologists or pursuant to a court order" [*Id.*]. "As opposed to Test Data," Defendant argues that Test Materials are often proprietary and copyrighted, which could trigger ancillary legal challenges" [*Id.* ¶ 14]. Defendant concludes, "Pursuant to Dr. Kelderman's ethical licensure obligations and the lack of

3

satisfactory assurance or court authority accompanying the [s]ubpoena, Dr. Kelderman should not be required to disclose the proprietary and protected Test Data and Test Materials to the Plaintiff, and the [s]ubpoena should be quashed as to requiring the disclosure of otherwise protected material to any party other than a qualified, licensed psychologist" [*Id*. ¶ 15].

Plaintiffs respond that a Florida regulation does not prohibit the production of the subpoenaed material [Doc. 52 pp. 3–5]. In addition, Plaintiffs state that "HIPAA requires Dr. Kelderman to produce such information to the Plaintiff or his designee" [*Id*. at 6]. Further, because the client consents to the release of the information, Plaintiffs assert that Dr. Kelderman will not be violating her duties under the APA [*Id*. at 8–10]. They argue that regardless, the information can be produced via a court order, and a subpoena should be considered a court order [*Id*. at 10]. Plaintiffs state that Defendant offers no evidence that releasing the Test Materials will violate copyright laws and that the Copyright Act "allows for the limited use of copyrighted material" [*Id*. at 13–14]. Finally, Plaintiffs contend that public policy supports the production of the subpoenaed material [*Id*. at 14–16]. They request that the Court deny the motion but enter a protective order to satisfy Dr. Kelderman's concerns [*Id*. at 16].

## II.    ANALYSIS

As an initial matter, Defendant moves for an order quashing the subpoena served on Dr. Kelderman pursuant to Rule 45 of the Federal Rules of Civil Procedure, specifically stating that the subpoena "requires disclosure of privileged or other protected matter" and "subjects a person to undue burden" [Doc. 47 p. 1]. "Generally, a party has no standing to quash a subpoena directed at a nonparty, but an exception exists where the party seeking to quash claims a 'personal right or privilege with regard to the documents sought.'" *Schaumleffel v. Muskingum Univ.*, No. 2:17-CV-463, 2019 WL 3071851, at *2 (S.D. Ohio July 15, 2019) (quoting *Waite, Schneider, Bayless &*

Case 3:22-cv-00253-CEA-DCP    Document 59    Filed 01/21/25    Page 4 of 8    PageID #: 231

*Chesley Co. L.P.A. v. Davis*, No. 1:11-cv-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013)).

"Personal rights or interests sufficient to confer standing to quash or object to a subpoena can arise

in a variety of contexts." *Fusion Elite All Stars v. Varsity Brands, LLC*, 340 F.R.D. 255, 260 (W.D.

Tenn. 2022) (quoting *Boodram v. Coomes*, No. 1:12CV-00057, 2016 WL 11333789, at *2 (W.D.

Ky. Jan. 28, 2016)) (providing an example: "a party has a personal interest in his or her

employment records held by a subpoenaed non-party . . . and in banking records of a party that are

in the possession of a financial institution . . ." (citation omitted)), *appeal denied*, No.

220CV02600, 2022 WL 1013432 (W.D. Tenn. Apr. 1, 2022)).  The party requesting that the Court

quash the subpoena has the burden of establishing standing.  *Riding Films, Inc. v. John Does 129-*

*193*, No. 2:13-CV-46, 2013 WL 3322221, at *4 (S.D. Ohio July 1, 2013) (citations omitted).  Some

courts have said that the burden is a "heavy" one.  *Schaumleffel*, 2019 WL 3071851, at *2 (citing

cases and explaining that "'conclusory' assertions of an interest or privilege is not enough").

Defendant has not identified a privacy interest in the records Plaintiffs seek.  Indeed, the

arguments against the subpoena relate to Dr. Kelderman's interests.  *See Barrentine v. Home Depot*

*USA, Inc.*, No. 3:07-CV-315, 2009 WL 10681146, at *2 (W.D. Ky. Oct. 21, 2009) ("[The]

[p]laintiff has no standing on which to assert the alleged privacy interest of her expert witness[.]").

The Court finds that Defendant has not met its burden in showing that it has standing to object,

and therefore, its objection to the subpoena must be denied.

Even assuming Defendant did have standing, the Court finds its objections not well taken.

Starting with the Test Data, Defendant states that it cannot "be disclosed by a practitioner when

compelled by a court order or other tribunal, consistent with the practitioner's ethical and

contractual obligations" [Doc. 47 ¶ 4].  Plaintiffs argue, however, that the provision Defendant

relies on—APA Ethics Code Standard 9.04, *Release of Test Data*—allows production upon client

consent [*See* Doc. 52 pp. 9–10]. And here, Plaintiffs consent. *See Fint v. Brayman Constr. Corp.*, No. 5:17-CV-04043, 2019 WL 150273, at *4 (S.D.W. Va. Jan. 8, 2019) ("Instead, Dr. Myers merely declined to provide the data on the basis that the ethical rule forbade all disclosures, which actually is not accurate. To the contrary, Standard 9.04 requires psychologists to release test data upon patient authorization *unless* there is a compelling reason not to do so. Thus, this standard is consistent with the HIPAA privacy regulation."); *see also Oelschlager v. Ear, Nose & Throat Specialties, PC*, No. 4:18CV3040, 2019 WL 5538070, at *1 (D. Neb. Oct. 25, 2019) (ordering protection of the neuropsychologist's raw data despite his arguments that "it would violate the ethics of his profession to provide this information to anyone other than another neuropsychologist").

In addition, Defendant argues that Test Data is protected under F.A.C. § 64B19-18.004 [Doc. 47 ¶ 6]. As Plaintiffs point out, Defendant omits a material portion of the regulation that allows for the release of the material—"when the release of the material is otherwise required by law" [Doc. 52 p. 4 (citation and emphasis omitted)]. Here, the Court finds that the proposed protective order would suffice.

Further, Defendant states that the Test Data is protected under HIPAA, 45 C.F.R. § 164.512(e)(1), unless the request is accompanied by a court order and provides satisfactory assurances [Doc. 47 ¶¶ 8–10]. By its terms, as Plaintiffs note, this section applies to circumstances when a covered entity does not have written authorization of the individual or the individual does not have an opportunity to object. *See* 45 C.F.R. § 164.512. Here, Plaintiffs are seeking Plaintiff S.A.'s records. But Defendant asserts that "when federal HIPAA statutes conflict with state law, the law more protective of privacy governs because HIPAA standards only provide a floor of privacy protection" [Doc. 47 ¶ 11]. HIPAA, however, "supersedes any contrary provision of State

Law[.]" 42 U.S.C. § 1320d-7; *see also* 45 C.F.R. § 160.203. To the extent the Florida regulation is contrary to HIPAA, the federal law preempts. *See Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1080 (9th Cir. 2007) (explaining that the HIPAA regulations "provide for an individual's broad access to his own health records").

Turning to Test Materials, Defendant states that the "Test Materials are often proprietary and copyrighted, which could trigger ancillary legal challenges" [Doc. 47 p. 4]. It does not offer any evidence in support of that argument. *See also Fint*, 2019 WL 150273, at *4 ("In regard to Dr. Myers's concern about copyright infringement if the test materials are disclosed, Standard 9.11 requires psychologists to protect the integrity and security of the materials to the extent *reasonably possible.* This principle does not mandate that psychologists should defy a court order for the purpose of guarding test tools that are already frequently used and widely available in the marketplace.").

In addition, Defendant states that "the APA Ethics Code states that Test Materials should only be released to qualified licensed psychologists or pursuant to a court order" [Doc. 47 ¶ 14]. Plaintiffs point out, and Defendant does not dispute, that "Standard 9.11 [of the APA Ethics Standards] only requires psychologists to make reasonable efforts to maintain integrity and security for test materials and other assessment techniques that are consistent with the law and contractual obligations. Producing the materials subject to the proposed [p]rotective [o]rder would satisfy the [s]tandard" [Doc. 52 p. 11]. *See Fint*, 2019 WL 150273, at *4 (finding that "the test materials can be reasonably safeguarded from dissemination by marking them as confidential under the terms of the [c]ourt's Protective Order").

Finally, Plaintiffs submit that although the motion should be denied a protective order is appropriate. The Court agrees and **DIRECTS** Plaintiffs to provide a copy of their protective order

in Word version to Chambers at poplin_chambers@tned.uscourts.gov on or before **January 24, 2025.**

## III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Quash Plaintiff's Subpoena [**Doc. 47**].

**IT IS SO ORDERED.**

ENTER:

_____
Debra C. Poplin
United States Magistrate Judge